No. 2573

Second Circuit

---

CROSS v. BERNSTEIN

---

(March 14, 1928. Opinion and Decree.)
(May 22, 1928. Rehearing Refused.)
(July 2, 1928. Writ of Certiorari and Review Denied by Supreme Court.)

---

*(Syllabus by the Court)*

1. Louisiana Digest—Acts—Par. 23, 31, 33; Sales—Par. 211.

Where a land owner sold to one person "a portion of lots 10, 11, 12 and 13 according to a map of 10-acre lot 31

made by W. R. Devoe, surveyor, March, A. D., 1875, and recorded in Book V of conveyances, page 338, recorder's office, Caddo parish, Louisiana, the portion of said lots described as follows: 50 feet of each of said lots next to and adjoining the Texas & Pacific railroad, the dimensions of said land herein conveyed being 50 feet by 160 feet between parallel lines: being the same land now occupied by Gallilee Church"; and thereafter sold to another person "a portion of lots 10, 11, 12 and 13 according to a map of 10-acre lot 31 made by W. R. Devoe, surveyor, March, A. D., 1875, and recorded in Book V of conveyances, page 338, recorder's office, Caddo parish, Louisiana, the portion of said lots being all not heretofore sold by this vendor to John R. Jones, as per record in Book Y of conveyances, page 483; same known as Gallilee Church property, and being that portion of said lots next to the alley which divides said lots from property of John Caldwell;" both sales having been duly recorded in the conveyance records, the first purchaser will be held to have acquired all land described in his act and as shown by the map referred to and the second purchaser to have acquired only what remained of the lots described after satisfying the first purchaser's claim.

2. **Louisiana Digest—Surveyors and Surveys—Par. 5; Acts—Par. 33.**

A "railroad" when given as a boundary of a tract of land sold, will be construed to mean the right-of-way and not the steel rails on the right-of-way.

   Int. & G. N. Ry. Co. vs. Anderson, 59 Texas 654.

Appeal from the First Judicial District Court, Parish of Caddo. Hon. T. F. Bell, Judge.

Action by C. L. Cross against E. R. Bernstein.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for plaintiff, appellant.

Wise, Randolph, Randall and Freyer, of Shreveport, attorneys for defendant, appellee.

REYNOLDS, J.  This is an action to establish the boundary between land owned by plaintiff and land owned by defendant, one of whom owns one part and the other of whom owns the remainder of lots 10, 11, 12 and 13 of 10-acre lot No. 31 on a plat of survey made in March, 1875, by W. R. Devoe, and recorded in Book V at page 338 of the conveyance records of the parish of Caddo, Louisiana.

The land in question is situated in the City of Shreveport.

Both parties deraign title to their respective properties from a common author, namely, W. H. Wise, who, by act dated November 9, 1880, recorded the same day in Book Y at page 482 of said records, sold to the author of plaintiff's title a part of said lots under the following description:

"A portion of lots 10, 11, 12 and 13 according to a map of 10-acre lot No. 31 made by W. R. Devoe, surveyor, March, A. D., 1875, and recorded in book V of conveyances, page 338, in the recorder's office of Caddo parish, Louisiana. The portion of said lots described as follows: 50 feet of each of said lots next to and adjoining the Texas & Pacific railroad: the dimensions of said land herein conveyed being 50 feet by 160 feet between parallel lines; being same land now occupied by Gallilee church."

and who, by act dated January 3, 1882, recorded the same day in Book Z at page 582 of said records, sold to the author of defendant's title the remainder of said lots under the following description:

"A portion of lots 10, 11, 12 and 13 according to a map of 10-acre lot No. 31

made by W. R. Devoe, surveyor, March, A. D., 1875, and recorded in Book V of conveyances, page 338, in the recorder's office of Caddo parish, Louisiana. The portion of said lots being all not heretofore sold by this vendor to John R. Jones as per record in Book Y of conveyances, page 483. Same known as Gallilee church property, and being that portion of said lots next to the alley which divides said lots from property of John Caldwell."

Plaintiff alleges that the boundaries of his property are as follows: Beginning at the junction of the southerly line of lot 13 with the westerly boundary of the right of way and thence along said westerly boundary southward 160 feet to the southwest corner of lot 10 or the junction of the southerly line of lot 10 with the westerly boundary of the right of way, thence westerly, along the southerly line of lot 10, 50 feet, thence northerly, by a line parallel to the westerly boundary of the right of way, 160 feet, to the southerly line of lot 13, and thence along the southerly line of lot 13, 50 feet to the westerly boundary of the right of way, the place of beginning.

Defendant alleges that the boundary between the two properties is where a certain fence formerly stood and which fence, he alleges, was in existence prior to the year 1880 and continued to be in existence until removed by plaintiff about six months prior to the filing of this suit.

Between the boundary claimed by plaintiff and that claimed by defendant lies a strip of ground extending 160 feet from the north line of lot 13 to the south line of lot 10 and having a width of 12.00 feet on its north line and 7.8 feet on its south line.

Defendant further alleges that he and his authors in title have been in adverse possession of this strip of ground, as owners, since the year 1882, and he pleads the prescription of 10 and 30 years in bar of any claim the survey to be made might show plaintiff had to this strip.

A survey of the property claimed by plaintiff and that claimed by defendant was made by H. E. Barnes and H. H. Jenkins, surveyors, who made a plat and proces verbal of the survey and returned it into court.

The proces verbal recites:

"We located the line between lots 13 and 14 of ten-acre lot 31, per map recorded in Book V page 338. This map only shows a portion of ten-acre lot 31, but by the use of map in book O, page 969, we have the distance shown for the depth of lots facing Texas avenue 150 feet and the alley in the rear of same 20 feet. We therefore set a stake at the corner of lots 13 and 14 on the alley. The deed to C. L. Cross calls for 50 feet of lots 13, 12, 10 and 11 adjoining the V. S. & P. right of way. Therefore the intersection of the right of way line with the line between lots 13 and 14 became the starting point. To fix this point, we find deed recorded in Book L page 536 calls for the V. S. & P. having 75 feet from the center of main line. We therefore laid off this 75 feet and set stake on the line between lots 13 and 14. Thence measuring the resulting depth of lot 13, after fixing the alley corner from Texas avenue and the rear corner from the main line of V. S. & P. R. R. we find 95.75 feet; of which we laid off 50 feet to Cross, and 45.75 feet to Bernstein. We thence established the south line of lot 10 of ten-acre lot 31, and by the same method of measurement from the railroad, we found a resulting depth of 92.9 feet; of which we laid off 50 feet to Cross, and 42.9 feet to Bernstein; thus fixing a line parallel to the right of way and 50 feet therefrom. This line, which is marked A-B on plat attached hereto and made a part hereof, shows the building owned by Bernstein to be 11.0 feet over the line and the existing fence between the two properties to be 12.0 feet east of stake A and 7.8 feet east of stake B. Our survey is made from the 75 foot right of way line of the V. S. & P. Ry. Co. and the line to be established depends on the location of the right of way line."

On these issues the case was tried and there was judgment establishing the boundary along the old fence line, as contended for by defendant, and plaintiff appealed.

## OPINION.

In 1880 W. H. Wise owned and was in possession of lots 10, 11, 12 and 13 of ten-acre lot No. 31 according to plat of survey made by W. R. Devoe, surveyor, in March, 1875, recorded in conveyance record V at page 338 of the public records of Caddo parish, Louisiana.

This map was filed in evidence, and it shows these lots to be bounded on the east by the right of way of the Texas & Pacific Railway Company or of the Vicksburk, Shreveport & Pacific Railway Company. It shows the lots to have a width of 40 feet each but does not show their depth. It shows them to be bounded on the east by the right of way in question and on the west by an alley.

The survey made by Barnes and Jenkins shows the lots to be bounded on the east by the right way and on the west by the alley and to have a width of 40 feet each; and it shows the depth of lot 13 on its northern line to be 95.75 feet and the depth of lot 10 on its southern line to be 92.9 feet.

On November 9, 1880, by act recorded the same day, Wise sold to John R. Jones a strip of the eastern side of the lots 50 feet wide, as per description copied above. He added to the description: "Being the same land now occupied by the Gallilee church."

By act dated September 24, 1888, recorded the same day in Book 6 at page 367 of the conveyance records of Caddo parish, Jones sold the same property to the Gallilee Colored Baptist Church, by the same description, to which he added: "And being the portion of said lots now occupied by said Gallilee Church and being the same property acquired by this vendor from Wm. H. Wise, as per act of sale recorded in conveyance book Y page 482 of said recorder's office."

On January 3, 1882, by act recorded the same day in book Z at page 582 of said records, William H. Wise sold to Jesse Johnson the remainder of lots 10, 11, 12 and 13, as per description above copied.

By act dated August 6, 1885, recorded the same day in book 3 at page 16 of said records, Jesse Johnson sold to Scott Williams

"* * * all that portion of 10-acre lot 31 of the city of Shreveport, Louisiana, as per map of said 10-acre lot recorded in book of conveyances V page 338 of the recorder's office of Caddo parish, Louisiana, not heretofore sold by W. H. Wise to John R. Jones as per deed in Book Y page 483, together with the buildings and improvements thereon. Being the same property now occupied by the said Scott Williams as a residence."

By act dated November 16, 1887, recorded the same day in book 4 page 786 of said records, Jesse Johnson sold to Harry Roberson

"* * * all that portion of lots 10 and 11 of 10-acre lot 31 of the city of Shreveport, Louisiana, as per map of said 10-acre lot recorded in conveyance book V page 338 of the recorder's office of Caddo parish, Louisiana, not heretofore sold by W. H. Wise to John R. Jones as per deed recorded in book Y page 483 of said recorder's office, together with all the buildings and improvements thereon."

Defendant acquired the property purchased by Williams and Roberson through mesne conveyances and by the same descriptions.

The survey made by Barnes and Jenkins

shows that the property occupied by the Gallilee church did not embrace all of the land claimed by plaintiff, to-wit: fifty feet off of each of the lots 10, 11, 12 and 13 next to and by a line parallel to the right of way, and that it did embrace a part of the right of way, approximately 37 feet east and west by approximately 156 feet north and south; that part of the land claimed by plaintiff and not occupied by the church being the strip of ground lying between the fence claimed by defendant as the boundary and the line fixed by the survey of Barnes and Jenkins as the boundary.

Defendant contends that the statement in the sale from Wise to Jones "being the same land now occupied by Gallilee church" controls that part of the description in the sale "a portion of lots 10, 11, 12 and 13 of 10-acre lot. No. 31 * * * the portion of said lots described as follows: 50 feet of each of said lots next to and adjoining the Texas & Pacific railroad: the dimensions of said land herein conveyed being 50 feet by 160 feet between parallel lines" and that as the church did not occupy any land west of or beyond the fence, Wise did not intend to sell nor Jones to buy any land beyond or west of the fence, and that inasmuch as defendant's author in title, Jesse Johnson, bought all of the lots except the part thereof sold by Wise to Jones, Jones intended to sell and Johnson to buy up the fence, and that therefore the fence is the boundary between the property of plaintiff and that of defendant.

We cannot concur in this view. If the argument were sound, it would put Wise in the position of intending to sell and Jones of intending to buy a part of the right of way of the railway company, since, as stated above, the Gallilee church was occupying a part of the right of way.

The first description of the land sold in the sale from Wise to Jones is particular and the second description, if it be called such, is a general one, and it is well settled that a specific or particular description is not controlled by a general one.

"A specific or particular description in a deed is not controlled by a general description, stating that the land specifically described is the same land as was acquired by a patent to the vendor, as the latter description is not sufficient to put third persons on notice of just what land has been conveyed."

Bender vs. Chew, 129 La. 849.

At the time of the sale by Wise to Jones the Gallilee church had never owned the property it occupied and was occupying it as a mere licensee.

Defendant complains that the surveyors in making the survey under order of court exceeded the authority given them by Articles 841 and 845 of the Civil Code and went outside of the respective titles of the parties and located the northwest corner of lot 13 from other sources, and that it was error for them to take into consideration the western boundary of the right of way of the railroad as shown on the Devoe map in locating the eastern boundary of lots 10, 11, 12 and 13.

In our opinion there was no greater reason for the surveyors to take as a starting point the corner contended for by defendant than there was for taking the line of the right of way, for the reason that both are shown on the Devoe map. The map shows the right of way to be the southeast boundary of the lots, and in establishing the boundary between contiguous properties all proof possible should be brought to bear on the question of its true location.

Bergeron vs. Babin, 2 La. App. 605.

Defendant insists that there is a marked

distinction between the words "right of way" and the word "railroad."

In our opinion, when the word "railroad" is used to describe a boundary of land, it means the railroad right of way. Steel rails alone do not constitute a railroad any more than a right of way does. All property essential to the operation of trains constitutes a railroad and not any individual part of railroad property.

" 'Railroad' in its ordinary acceptation, fairly includes all the structures which are necessary and essential to its operation, and as used in a congressional grant in aid of a construction of a railroad has a more extended signification than 'track' or 'roadway,' and includes station houses, etc."

Words & Phrases, vol. 7, page 5901.

"In common parlance a railway consists of the road and the rolling stock. The former includes everything that is immovable or affixed to the soil, such as station houses, round houses, platforms, water tanks, and machine shops. The road cannot be operated without these, or considered constructed until they are built. A license to take material for the construction of a railroad should not be confined to material necessary for the construction of the mere track."

Ibid.

"The word 'railroad' shall be held to include, in addition to the track of said railroad, including the rails, couplings, spikes, ties, bridges, culverts, tunnels, cuts, fills, embankments, and the land owned by the right of way of such railroad, all the structures, fixtures, improvements, and buildings of said railroad owned thereon or used in connection therewith."

Ibid.

There is no evidence showing when or by whom or for what purpose the fence around Gallilee church was built nor any suggestion that it was intended to mark the boundary between the property sold by Wise to Jones and that sold by him to Johnson. The probabilities are that it was built by the church authorities to keep trespassers away from the church and the church congregation not then owning the land and being mere licensees and having no interest to erect the fences on any particular lines erected them where they pleased.

The law and the evidence convinces us tht the boundary between the property of plaintiff and the property of defendant is as fixed by the survey made under order of court by the surveyors, H. E. Barnes and H. H. Jenkins, and it is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, C. L. Cross, and against the defendant, E. R. Bernstein, fixing and establishing as the boundary line between their respective properties the line "A"-"B" as shown on the proces verbal and plat or survey made by them under order of court in this suit, which plat and proces verbal are made part of this judgment by reference. Defendant to pay all costs.